UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
DONALD WILLIAMS,

                          Plaintiff,

           -against-

NEW YORK CITY HOUSING
AUTHORITY and UNITEC ELEVATOR
CO.,

                        Defendants.
------------------------------------------------------------------X

**MEMORANDUM & ORDER**

06-cv-5473

NICHOLAS G. GARAUFIS, United States District Judge.

Under Section 1701u(c) of Title 12 of the United States Code, first promulgated as Section 3 of the Housing and Urban Development Act of 1968, Pub. L. No. 90-448, 82 Stat. 476, 476 (1968) ("Section 3"), the Secretary of Housing and Urban Development must require that public housing agencies and their contractors and subcontractors "make their best efforts . . . to give to low- and very low-income persons the training and employment opportunities generated by" certain federal housing assistance programs. Section 3 includes a preference hierarchy which provides that these best efforts must first be directed at "residents of the housing developments for which the assistance is expended," then for "residents of other developments managed by the public . . . housing agency that is expending the assistance," and then for other groups of individuals. 12 U.S.C. § 1701u(c)(1)(B).

For the last six years, Plaintiff pro se Donald Williams ("Plaintiff"), a public housing resident in New York City, has been engaged in a vigorous campaign to enforce his rights under Section 3, in pursuit of which he has filed thirteen actions in this court (and has paid at least

1

$2,800 in filing fees).[1] In the present action and in these other actions, Plaintiff generally alleges that (1) contractors of the New York City Housing Authority ("NYCHA") breached their verbal promises to hire him[2] and/or either did not make enough Section 3 hires or hired workers under Section 3 in violation of Section 3's preference hierarchy;[3] (2) the NYCHA failed to ensure that contractors were fulfilling their responsibilities under Section 3;[4] and (3) the United States Department of Housing and Urban Development ("HUD") wrongfully denied his administrative complaints against the NYCHA.[5][6] (See, e.g., No. 06-cv-5473, Am. Compl. ¶¶ 12, 15, 21.)

Now before the court are NYCHA's motion to dismiss Plaintiff's Amended Complaint, and its motion for attorney's fees pursuant to Section 1988 of Title 18. For the reasons stated below, NYCHA's motion to dismiss the Amended Complaint is granted. The Amended Complaint is also dismissed as against Unitec Elevator Co. ("Unitec") as frivolous, because it is completely devoid of any allegation that Unitec is a state actor. NYCHA's motion for attorney's fees is granted, and Plaintiff is advised that any further attempts to pursue a private right of action pursuant to Section 3 or to pursue a claim pursuant to Section 1983 against a private actor

---

[1] See Williams v. Selectric Elec. Contracting, No. 02-cv-1534 (NGG) (LB); Williams v. Zaffuto, No. 02-cv-1535 (NGG) (LB); Williams v. M.I. Elec., Inc., No. 02-cv-1832 (NGG) (LB); Williams v. United States Dep't of Hous. & Urban Dev., No. 04-3488 (NGG) (RLM); Williams v. New York City Hous. Auth., No. 05-cv-428 (NGG) (LB); Williams v. New York City Hous. Auth., No. 05-cv-539 (NGG) (LB); Williams v. Hugh O Kane Elec. Co., No. 05-cv-2946 (NGG) (LB); Williams v. New York City Hous. Auth., No. 06-cv-5473 (NGG) (LB); Williams v. United States Dep't of Hous. & Urban Dev., No. 07-cv-385 (ILG) (SMG); Williams v. United States Dep't of Housing & Urban Dev., No. 08-cv-2161 (NGG) (LB); Williams v. New York City Hous. Auth., No. 08-cv-2802 (NGG) (LB); Williams v. New York City Hous. Auth., No. 08-cv-2803 (NGG) (LB); Williams v. United States Dep't of Housing & Urban Dev., 08-cv-2804 (NGG) (LB).
[2] (See Complaint, No. 02-cv-1534, ¶¶ 8-11; Complaint, No. 02-cv-1535, ¶ 7; Complaint, No. 02-cv-1832, ¶¶ 7-11; Complaint, No. 04-cv-3488, ¶ 9; Complaint, No. 05-cv-428, ¶¶ 7-9; Complaint, No. 05-cv-539, ¶¶ 7-11; Complaint, No. 05-cv-2946, ¶ 13; Complaint, No. 07-cv-335, ¶¶ 8-9; Complaint, No. 08-cv-2802, ¶ 8.)
[3] (See Complaint, No. 02-cv-1534, ¶ 6; Complaint, No. 02-cv-1535, ¶ 15; Complaint, No. 02-cv-1832, ¶ 15; Complaint, No. 04-cv-3488, ¶ 10; Complaint, No. 05-cv-539, ¶¶ 14-15; Complaint, No. 06-cv-5473, ¶ 12; Complaint, No. 07-cv-335, ¶ 9; Complaint, No. 08-cv-2802, ¶ 10; Complaint, No. 08-cv-2803, ¶ 12.)
[4] (See Complaint, No. 06-cv-5473, ¶¶ 10, 15; Complaint, No. 08-cv-2161, ¶ 20; Complaint, No. 08-cv-2802, ¶ 12; Complaint, No. 08-cv-2803, ¶ 16.)
[5] (See Complaint, No. 04-cv-3488, ¶¶ 14-15; Complaint, No. 05-cv-428, ¶¶ 11-13; Complaint, No. 05-cv-539, ¶¶ 16-18; Complaint, No. 06-cv-5473, ¶¶ 17-21; Complaint, No. 07-cv-335, ¶¶ 10-14; Complaint, No. 08-cv-2161, ¶ 23-26.)
[6] In No. 08-cv-2803, Plaintiff also includes an allegation that he was discriminated against in violation of Title VII. (Complaint, No. 08-cv-2803, ¶ 11.)

where no state action is present, either in this action or in any other action (whether already filed or not), may result in the imposition of sanctions.

## I. STANDARD OF REVIEW

The standard of review of a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is the same as that applied under Rule 12(b)(6). Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir. 1994). In order to survive a Rule 12(b)(6) motion, "a complaint need only plead 'enough facts to state a claim for relief that is plausible on its face.'" Sharkey v. Quarantillo, 541 F.3d 75, 92 (2d Cir. 2008), quoting Bell Atlantic Corp. v. Twombly, – U.S. –, 127 S.Ct. 1955, 1974 (2007). Because Plaintiff is a pro se litigant, the court "read[s] his supporting papers liberally, and will interpret them to raise the strongest arguments that they suggest." Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994).

## II. FACTUAL BACKGROUND

The factual background of this action, as alleged by Plaintiff in his Amended Complaint, and as supplemented in his Memorandum of Law, is as follows:

Plaintiff is a resident of the Ocean Bay Houses, a property of NYCHA. (Am. Compl. ¶ 2.) In 2003, NYCHA contracted with Unitec to perform modernization work at some NYCHA properties. (Id. at ¶ 6.) NYCHA's contract with Unitec was subject to the requirements of Section 3. (Id.)

Plaintiff was hired by Unitec as an elevator helper on August 8, 2002, but was then laid off in June of 2003, when the project he was working on was completed. (Pl. Opp. at 1-2.) Plaintiff alleges that on July 7, 2003, he went to NYCHA's Department of Resident Employment Services ("Section 3 Office") to speak about being placed as an employee with Unitec. (Id. at ¶ 7.) Feliciano Ramirez, a consultant in the office, told Plaintiff that he would be placed in a job

3

when one opened up at Borinquen Plaza, Lillian Wald Houses, or Cooper Park Houses. (Id. at ¶ 8.) On October 7, 2003, Unitec started performing a contract at Borinquen Plaza, and in 2004 it started work at Lillian Wald and Cooper Park Houses. (Id. at ¶ 9.) Plaintiff did not receive work on any of the sites. (Id.)

After learning that Unitec had started work at Borinquen Plaza, Plaintiff returned to NYCHA's Section 3 Office, where Mr. Ramirez told Plaintiff not to bother him. (Id. at ¶ 10.) Plaintiff was then told by another consultant in the office, Jeanne Gillium, that he had to be a resident of Borinquen Plaza to be placed for employment with Unitec, and that a resident of Borinquen Plaza had most likely received the available position. (Id. at ¶ 11.)

Plaintiff was told by someone from the tenant association of Borinquen Plaza that Unitec had informed the association that it had hired an employee on the job. (Id. at ¶ 12.) However, Plaintiff alleges that Unitec in fact did not hire any employees. (Id.) Plaintiff thereafter returned to NYCHA's Section 3 Office once more. The director of the Section 3 Office, Stephen Johnson, asked Plaintiff to leave his phone number and the location of the job he was interested in, and told him that someone would be in contact with him. Nobody ever called Plaintiff. (Id. at ¶ 13.)

On October 6, 2003, Plaintiff inquired at Unitec's office regarding a job, and spoke to the manager, Joe Conley. Joe Conley told Plaintiff that Unitec could not hire Plaintiff because he was not authorized by NYCHA to work. Plaintiff alleges that Unitec knew that Plaintiff was authorized by NYCHA to work. (Id. at ¶ 14.)

On October 7 or 9, 2003, and again on December 7, 2003, Plaintiff again spoke with Jeanine Gillium and told her that he had experience fixing elevators and that he was a member of

4

the union. (Id. at ¶ 15.) Ms. Gillium told Plaintiff not to bother her, and that Plaintiff should not call her again. (Id.)

On or about December 26, 2003, Plaintiff filed a complaint against NYCHA with HUD, stating that he was being denied employment in violation of Section 3 of the HUD Act of 1968. HUD rendered its decision on March 29, 2006, finding that Unitec did not hire any new employees under the contract in question with NYCHA. (Id. at ¶ 18.) Because the regulations under Section 3 do not require new hires to be made, but only require that certain proportions of new hires be Section 3 hires, see 24 C.F.R. § 135.30 (2008), HUD determined that Unitec was in compliance with Section 3. (Am. Compl. ¶ 18.)

Plaintiff has four legal claims. First, he claims that NYCHA performed its duty under Section 3 negligently and recklessly. Second, he claims that both Defendants intentionally treated him differently from other similarly-situated NYCHA residents in retaliation for filing a previous unrelated lawsuit, in violation of the Fourteenth Amendment. Third, Plaintiff claims that both Defendants violated his right to due process, in violation of the Fourth Amendment.

### III. PLAINTIFF'S SECTION 3 CLAIM

Plaintiff claims that NYCHA performed its duty under Section 3 negligently and recklessly, and he asks the court for $300,000 in damages in recompense, as well as "such other and further relief in law as this court deems just and proper." (Am. Compl. 4-5.) Plaintiff argues that Section 3 either creates an implied private right of action or that it creates rights enforceable pursuant to Section 1983 of Title 42. Plaintiff is aware that there is little authority for either proposition; he states that "there is little case law on the instant action concerning a plaintiff bringing a lawsuit for an alleged violation of Section 3." (Pl. Opp. 4.) Plaintiff, however, ignores this court's September 1, 2006 Memorandum and Order in Williams v. United States

5

Department of Housing and Urban Development, 04-cv-3488 (NGG) (RLM) ("Williams v. HUD M&O"), in which the court found that Plaintiff had failed to demonstrate that such a privately enforceable right existed. 2006 WL 2546536, at *9 (E.D.N.Y. Sep. 1, 2006). After comparing Section 3 with other statutes the Supreme Court and the Second Circuit had found were not privately enforceable, the court found that although Section 3 had some indicia of private enforceability, Plaintiff had not met his burden to demonstrate that Section 3 was privately enforceable. (Id.)

In his papers filed with respect to this action, which was filed after the court's Williams v. HUD M&O was issued, Plaintiff makes no further arguments regarding the private enforceability of Section 3. Moreover, although Plaintiff filed a timely notice of appeal with respect to the court's Williams v. HUD M&O, he procedurally defaulted by failing to timely submit his brief, and his appeal was therefore dismissed. Order, Williams v. United States Dep't of Hous. & Urban Dev., No. 06-4578-cv (2d Cir. July 31, 2007). Therefore, for the reasons stated in the Williams v. HUD M&O, Plaintiff's claim under Section 3 is dismissed.

Under 42 U.S.C. § 1988(b), in any action to enforce Section 1983, a district court, "in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." Although fees are regularly awarded to prevailing plaintiffs, "a plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." Panetta v. Crowley, 460 F.3d 388, 399 (2d Cir. 2006). Here, the court is satisfied that Plaintiff's claim to privately enforce Section 3 is sufficiently frivolous to warrant assessment of attorney's fees against him. Principally, Plaintiff initiated his claim to privately enforce Section 3 after this court previously found that Plaintiff had failed to demonstrate the existence

of such a private right of action. Plaintiff made no additional arguments in his moving papers relevant to whether such a private right of action existed. Plaintiff did not pursue his appeal of the court's Williams v. HUD M&O, which would have been the proper course of action if Plaintiff disagreed with its holding. Finally, Plaintiff was on notice that attorney's fees could be assessed against him if he pursued a frivolous claim, because the court discussed the standard for the imposition of such fees in the Williams v. HUD M&O. See Williams v. HUD M&O at *11. Because Plaintiff's Section 3 claim is frivolous, NYCHA is entitled to recover from Plaintiff its reasonable attorney's fees allocable to its defense of Plaintiff's Section 3 claim.

## IV. PLAINTIFF'S DUE PROCESS AND EQUAL PROTECTION CLAIMS

As a municipal agency, NYCHA may not be held liable under Section 1983 on the basis of respondeat superior. Monell v. Dep't of Social Servs., 436 U.S. 658, 690-91 (1978); see also Bazile v. New York City Hous. Auth., No. 00-cv-7215 (SAS), 2002 WL 171690, at *16 (S.D.N.Y. Feb. 1, 2002). Rather, a plaintiff must establish both that his rights were violated and that the violation was caused by a municipal policy or custom. See Monell, 436 U.S. at 690-91. To establish a municipal policy or custom, a plaintiff must establish that the constitutional violation resulted from 1) a formal policy, promulgated or adopted by the city, id. at 690; 2) an action or specific decision made by an official with policymaking authority, Pembaur v. City of Cincinnati, 475 U.S. 469, 483-84 (1986); or 3) an unlawful practice by subordinate officials so permanent or well-settled so as to constitute a "custom or usage" and so widespread as to imply the constructive acquiescence of policymaking officials, City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988).

Even if Plaintiff could demonstrate that he was deprived of his right to due process and equal protection, his allegations regarding the existence of a municipal policy or custom are

7

insufficient. First, Plaintiff has made no allegations regarding a formal policy of NYCHA that led to the deprivations he alleges. Second, the actions Plaintiff alleges were taken by clerks at NYCHA's Section 3 Office, who Plaintiff does not allege possess policymaking authority. The one action taken by the director of the Section 3 Office, who might arguably have policymaking authority, was a strictly ministerial act – telling Plaintiff to leave his phone number and the job he was interested in – that did not violate Plaintiff's constitutional rights. Third, Plaintiff has not sufficiently alleged the existence of a widespread, permanent, and well-settled unlawful practice, as he has only alleged a single incident in his complaint, involving NYCHA employees below the policy-making level. See Ricciuti v. New York City Transit Auth., 941 F.2d 119, 123 (2d Cir. 1991) ("[A] single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy.") Plaintiff's due process and equal protection claims are therefore dismissed as against NYCHA, because his allegations as to the existence of a municipal policy or custom are insufficient.

## V. PLAINTIFF'S CLAIMS AGAINST UNITEC

In the Williams v. HUD M&O, this court discussed the standards for asserting a Section 1983 against a private actor:

> 'An action under § 1983 cannot, of course, be maintained unless the challenged conduct was attributable at least in part to a person acting under color of state law.' Kam Shing Chan v. City of New York, 1 F.3d 96, 106 (2d Cir. 1993). . . Conduct 'by a private entity constitutes state action only when "there is a sufficiently close nexus between the State and the challenged action of the [private] entity so that the action of the latter may be fairly treated as that of the State itself."' Tancredi v. Metro. Life Ins. Co., 378 F.3d 220, 229 (2d Cir. 2004). . . . 'The "close nexus" test is not satisfied merely by the fact that that the private entity is a business affected with the public interest . . . . Acts of . . . private contractors do not become acts of the government by reason of their significant or even total engagement in performing public contracts. Such responsibility may be found when, after the facts are sifted and weighed, it is evident that a state or its political subdivision has exercised coercive power or has provided such

8

significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the [state or political subdivision].'" Chan, 1 F.3d at 106. \ Williams v. HUD M&O at *10-11.

Here, as in Williams v. HUD, Plaintiff's Amended Complaint is completely devoid of any allegation that NYCHA "exercised coercive power or . . . significant encouragement," see Chan, 1 F.3d at 106, in Unitec's decision not to hire Plaintiff. Plaintiff's allegations therefore do not establish the requisite close nexus between Unitec and NYCHA that would render Unitec a state actor subject to suit under Section 1983. The court therefore sua sponte dismisses Plaintiff's claims against Unitec as frivolous. See Fitzgerald v. First E. Seventh St. Tenants Corp., 221 F.3d 362, 364 (2d Cir. 2000) (per curiam) (holding that district court has authority sua sponte to dismiss frivolous claims, even where the plaintiff has paid the required filing fee).

## VI. CONCLUSION

For the reasons stated above, Plaintiff's Amended Complaint is dismissed as against both Defendants. Moreover, NYCHA's motion for attorney's fees is granted, subject to approval by the court of the amount thereof. Furthermore, Plaintiff is warned that continued prosecution of frivolous claims, like a claim that Section 3 is privately enforceable or a claim pursuant to Section 1983 against a private actor where there are no indications of state action, may result in the imposition of sanctions. The court may impose monetary sanctions pursuant to Federal Rule of Civil Procedure 11, which requires that "claims, defenses, and other legal contentions [be] warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law," and which allows the court to impose sanctions, after notice and a reasonable opportunity to respond. In the alternative, if the court deems it necessary, the court may, after notice and a reasonable opportunity to respond, enjoin Plaintiff from filing further lawsuits. See Lau v. Meddaugh, 229 F.3d 121, 123 (2d Cir. 2000) ("The

9

issuance of a filing injunction is appropriate when a plaintiff "abuse[s] the process of the Courts to harass and annoy others with meritless, frivolous, vexatious or repetitive . . . proceedings.")

SO ORDERED.

Dated: Brooklyn, New York
December 3, 2008

/s/ Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge